UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
RONALD WOOLF,

                          Plaintiff,

    -against-

BLOOMBERG L.P.,
ANDREW BOWYER, individually,
MELISSA STRADA, individually,
MATHEW ASMAN, individually,
MICHAEL MORRIS, individually,
JIM NIZIOLEK, individually, and
GARY KOTOVETS, individually

                        Defendants.
---------------------------------------------------------X

Civil Case No:

Plaintiff Demands a
Trial by Jury

**COMPLAINT**

Plaintiff, RONALD WOOLF (hereinafter referred to as "Plaintiff" or "WOOLF"), by and through his attorneys, DEREK SMITH LAW GROUP PLLC, hereby complains of Defendant BLOOMBERG L.P. (hereinafter referred to as "Defendant" or "BLOOMBERG"), Defendant ANDREW BOWYER (hereinafter referred to as "BOWYER"), Defendant MELISSA STRADA (hereinafter referred to as "STRADA"), Defendant MATTHEW ASMAN (hereinafter referred to as "ASMAN"), Defendant MICHAEL MORRIS (hereinafter referred to as "MORRIS"), defendant GARY KOTOVETS (hereinafter referred to as "KOTOVETS") and Defendant JIM NIZIOLEK (hereinafter referred to as "NIZIOLEK") and (hereinafter collectively referred to as "Defendants") upon information and belief, as follows:

## NATURE OF CASE

Plaintiff RONALD WOOLF complains pursuant to the Americans with Disabilities Act of 1990 ("ADA") as amended, Title VII of the Civil Rights Act of 1964, as codified,

42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), the Age Discrimination Act of 1967 (ADEA), The Family and Medical Leave Act, the Administrative Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. § 1367 seeking declaratory relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, age discrimination, national origin discrimination, disability discrimination, retaliation and wrongful termination by Defendants.

## JURISDICTION AND VENUE

1. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under the ADA.   The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

2. Additionally, the Court has supplemental jurisdiction under the State and City laws of New York.

3. On or about September 5, 2013 Plaintiff submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC").   The federal charge number is 520-2013-02597.

4. On or about January 22, 2014, Plaintiff submitted a second Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC").   The federal charge number is 520-2014-00979.

5. On or about June 22, 2016, Plaintiff received Right to Sue Letters for both charges from the EEOC.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90)

days of receiving the Right to Sue Letters.

7. Venue is proper in this court, as the events giving rise to this action arose in New York County within the Southern District of New York.

## PARTIES

8. Plaintiff is an individual man who is a resident of the State of New Jersey, Hudson County.

9. At all times material, Defendant BLOOMBERG is a domestic business corporation duly existing by virtue of the laws of the State of Delaware that does business in the State of New York.

10. At all times material, ANDREW BOWYER (hereinafter referred to as "BOWYER") was and is the Team Leader of the Pricing Group for Defendant BLOOMBERG.

11. At all times material, BOWYER had supervisory authority over Plaintiff with regard to his employment.

12. At all times material, MELISSA STRADA (hereinafter referred to as "STRADA") was an executive in the Professional Development Group for Defendant BLOOMBERG.

13. At all times material, STRADA had supervisory authority over Plaintiff with regard to his employment.

14. At all times material, MATTHEW ASMAN (hereinafter referred to as "ASMAN") was and is an internal legal counsel for Defendant BLOOMBERG.

15. At all times material, ASMAN had supervisory authority over Plaintiff with regard to his employment.

16. At all times material, JIM NIZIOLEK (hereinafter referred to as "NIZIOLEK") was a senior member of the Human Resources Department for Defendant BLOOMBERG.

17. At all times material, NIZIOLEK had supervisory authority over Plaintiff with regard to his employment.

18. At all times material, MICHAEL MORRIS (hereinafter referred to as "MORRIS") was the Global Sales Manager for Data Acquisitions for Defendant BLOOMBERG.

19. At all times material, MORRIS had supervisory authority over Plaintiff with regard to his employment.

20. At all times material, GARY KOTOVETS (hereinafter referred to as "KOTOVETS") was the Global Head of Data Acquisitions for Defendant BLOOMBERG.

21. At all times material, KOTOVETS had supervisory authority over Plaintiff with regard to his employment.

## MATERIAL FACTS

22. Plaintiff is seeking damages to redress the injuries that Plaintiff has suffered as a result of being discriminated against by his employer on the basis of his age, national origin, and disability, together with retaliation and unlawful termination.

23. At all times material, RONALD WOOLF (hereinafter referred to as "WOOLF" or "Plaintiff") was employed as a Content Specialist for Defendant BLOOMBERG.

24. In or around June of 2011, Plaintiff WOOLF commenced employment with Defendant BLOOMBERG as a Content Specialist.

25. Plaintiff WOOLF's position was to support the Bloomberg Industries Group (hereinafter referred to as ("BI") by negotiating commercial data contracts throughout the United States.

26. At all times relevant, Plaintiff did and does suffer from the medical condition of Complex Migraine Headaches with Neurological Deficits.

27. In or about February of 2013, Plaintiff WOOLF began to experience more frequent and intense migraine headaches as a result of increasing stress at work, including an incident on or about March 19, 2013, in which Defendant, ANDREW BOWYER, berated Plaintiff at his desk in an open work environment because he disagreed with Plaintiff's negotiation tactics on a deal.  This incident occurred in front of a senior colleague of Plaintiff who commented to Plaintiff that Mr. Bowyer's attitude was very unprofessional, rude and disrespectful and that that type of conversation should take place in a private conference room.

28. On or about March 19, 2013, Plaintiff WOOLF wrote a letter to Defendant, MELISSA STRADA, stating that he could no longer endure the added stress at work, and citing the incident with Defendant ANDREW BOWYER, as an example.  Plaintiff WOOLF requested a transfer to a new group within BLOOMBERG because "the stress was affecting his headaches."

29. On or about March 26, 2016, Plaintiff sought care from Defendant BLOOMBERG's own in house medical professional, Dr. Michelle LeGar, FNP-BC, due to his overall deteriorating health including significant stomach pain and discomfort and increasing pain and frequency of his migraine headaches.  Dr. LeGar indicated to Plaintiff that work-related stress was a likely culprit for his medical issues and that he should follow up with his neurologists for his migraine condition and be seen as soon as possible by a GI specialist.  Dr. LeGar's Bloomberg office arranged an appointment for WOOLF. Dr. LeGar wrote a letter to BLOOMBERG management stating, "[t]his letter is to advise you that Ronald Woolf was under my care on 3/26/16 and medically advised to follow up

with a specialist tomorrow at 2 pm.   If you have any questions regarding this matter please feel free to contact me at 212-617-3750."

30. On or about on May 29, 2013, Plaintiff's doctor, Dr. Michael Hutchinson, M.D., Ph.D., wrote to Defendant about Plaintiff's need to change work environments.   The letter stated that Dr. Hutchinson is Plaintiff's primary neurologist, and that Dr. Hutchinson has treated Plaintiff for migraine headaches since 2000.   Dr. Hutchinson stated that "during my last examination of Mr. Woolf on May 2nd 2013 his condition had deteriorated quite significantly and I recommended and prescribed additional medication while also administering the same injections that he normally receives."

31. Dr. Hutchinson explained that the single biggest risk for migraines is stress, and therefore Plaintiff WOOLF is "at a significant risk for stroke or heart attack simply from the stress he is currently experiencing at work."   Dr. Hutchinson therefore opined that, "a medical leave of absence, or intermittent medical leaves of absence, alone will not significantly mitigate this stress."

32. Dr. Hutchinson stated that as Plaintiff's primary attending neurologist "I have strongly advised that Mr. Woolf do what is necessary to change his current work environment, as it is apparent that the primary trigger of these most recent, intense and frequent migraines involving neurological deficits, is emotional stress at work, which in the short-term has impacted his speech, sight, and ability to concentrate. However, more seriously, this also indicates a grave deterioration of his condition. Given his genetic disposition to heart disease based on family history, I would characterize Mr. Woolf's condition as serious, one that could in fact be life threatening if not properly treated and managed."

33. Dr. Hutchinson concluded, "[p]lease feel free to contact me with any questions. Mr. Woolf has given me authorization to release his medical records to document and verify the above."

34. On or around May 30, 2013, Defendant, MATTHEW ASMAN acknowledged the receipt of Dr. Hutchinson's letter and stated that Defendant BLOOMBERG will engage in the interactive dialogue with Plaintiff, as is required under the ADA.

35. Despite acknowledging receipt of Plaintiff's neurologist's letter, Defendant's HR department did not help Plaintiff WOOLF identify potential vacancies or otherwise assist with his request for a transfer as a reasonable accommodation under the ADA.

36. Plaintiff made repeated requests to BLOOMBERG management, including Defendant MORRIS, requesting accommodations, but to no avail.

37. Despite the lack of help, Plaintiff WOOLF identified many potential job assignments he was qualified for, but Defendant BLOOMBERG failed to engage in the interactive dialogue required under the ADA to consider Plaintiff for those positions.

38. On or about June 24, 2013, Plaintiff WOOLF, in an attempt to further his request for a transfer as a reasonable accommodation, sent an email to Defendant NIZIOLEK stating that he has "narrowed his job search down to two positions (from the 13 positions originally submitted one week prior) displayed on PATH<GO> as OPEN." Plaintiff WOOLF indicated that both positions would provide the reasonable accommodations he was seeking in order to deal with his medical disability. Plaintiff WOOLF indicated that he clearly met all of the qualifications for these job positions.

39. On or about July 2, 2013, Plaintiff WOOLF sent an email to Defendant NIZIOLEK, requesting an update on his accommodation request. Plaintiff WOOLF stated, "l have

not heard anything back regarding my request for a reasonable accommodation under the ADA.   It is now over a month since the firm was first notified by my doctor about my condition and I have provided you with the information that you requested to make a determination if either additional information was needed or if HR could move forward with my request."

40. Defendant NIZIOLEK responded that he would be having a meeting with Plaintiff the next day focused solely on another matter, and "we will be in touch with you about your accommodation request at a later date."

41. On or about July 15, 2013, Plaintiff sent the Defendants another letter from his neurologist, Dr. Hutchinson, which stated, "Ronald Woolf was seen in my office today for a follow-up examination given the increased frequency of suffering complex migraines over the past 4 to 6 weeks. During this time I have advised Mr. Woolf to increase his dose of amitriptyline on two occasions: first from 20mg to 30mg per day and now to 50mg per day, in order to help him manage the severe pain from his migraines. Also, due to medical necessity, I injected Mr. Woolf with Botox three weeks prior to his scheduled visit for this procedure to try and enable him to gain control of the migraines, which effectively make it impossible for him to work."

42. Dr. Hutchinson stressed, "I reiterate what I wrote in my May 29th letter, which I understand was forwarded to Bloomberg's Legal and Human Resources Department. Because many of Mr. Woolf's migraines are now associated with neurological deficits (he has had four such complex migraines in the past two months), and because such complex migraines are known to be associated with a significant increase in the risk of stroke, and because all have occurred while at

work, it is my opinion that Mr. Woolf must immediately be allowed to change his work environment. Out of medical necessity, I strongly advise that accommodations be given to Mr. Woolf as soon as possible that will significantly lower his work stress as his work environment is obviously a major trigger to these more frequent and intense migraines."

43. Dr. Hutchinson again concluded by stating, "[s]hould you have any questions please do not hesitate to contact me directly at my office. Mr. Woolf has given me authorization to disclose and discuss his ongoing treatments for this serious medical condition.

44. After significant delay, on or about July 19, 2013, Plaintiff WOOLF met with Defendant NIZIOLEK to discuss his request for a reasonable accommodation under the ADA. Defendant NIZIOLEK stated that he "feels that any other job would provide the same level of stress equal to what [Plaintiff WOOLF] has been experiencing" no matter where in the firm Plaintiff WOOLF worked. Defendant NIZIOLEK therefore unilaterally decided that, "the approval of intermittent FMLA leave should be sufficient to manage [Plaintiff WOOLF's] condition."

45. On or about December 13, 2013, Plaintiff submitted yet another letter from his treating neurologist, Dr. Hutchinson, to Defendants. Dr. Hutchinson stated "I have received the follow up report on Ronald Woolf from Dr. Daniel Soffer of the Mount Sinai Heart and Vascular Center regarding the percutaneous closure of a large patent foramen ovale (PFO) in Mr. Woolf, which was performed successfully on October 25, 2013. Mr. Woolf recently followed up with me on November 21, 2013. That day I injected Mr. Woolf with 200 units of Botox. I have determined that continuing his current medical

treatment, from a neurological standpoint, is necessary and important to control his complex migraines and tension headaches.   Mr. Woolf still remains at increased risk for stroke or heart attack given his disposition to suffering complex migraines even after the PFO closure, thus his treatment plan with me will continue.   His next scheduled appointment for Botox injections at my office is on February 27, 2014.   I will also continue to monitor him for any necessary adjustments in his medications."

46. Dr. Hutchinson continued, "[i]n my opinion, the closure of the PFO was a reasonable and precautionary measure that may in fact reduce the chance of stroke and the frequency of his migraines, however especially given the stress levels he has complained about at work since Spring 2013, his continued treatment to control his migraine condition remains very important.   Therefore, I continue to strongly recommend Mr. Woolf reduce his stress levels, particularly at work, as it is still very important as part of his ongoing medical care as explained in my previous letters dated May 29, 2013 and July 15, 2013."

47. Defendants failed to engage in the interactive dialogue required under the ADA, despite Plaintiff's neurologist stating that FMLA leave was clearly not enough to reasonably accommodate Plaintiff's disability.

48. With regard to Plaintiff WOOLF's performance, Plaintiff received three satisfactory performance evaluations in 2011 and 2012 ("meets expectations") and he received a compensation increase in January 2013.

49. For the year 2011 year-end review, Plaintiff received "meets expectations" rankings on two of the seven performance criteria, and "good" rankings on the remaining five.   On the 2012 interim review and the 2012 year-end review, which he received in January 2013, Plaintiff received "distinguished" ratings for "Know the Customer," a "good" that rose to

"distinguished" on "Work Hard;" and a "meets expectations" that rose to "good" on "Move Fast and Thoroughly."   Plaintiff received "good" ratings in both periods on "Learn from Mistakes, Be Bold and Collaborate," and he received "meets expectations" in "Lead by Example."

50. After his 2012 evaluation was delivered to him in January 2013, Plaintiff received a salary increase and a bonus opportunity increase.   Most significantly, Plaintiff was promoted to be the Regional Coordinator of the Americas for Bloomberg Industries/BMart/and Commodities.

51. During his 2012 annual evaluation, Plaintiff was instructed to train a new employee of Defendant Bloomberg, Vlad Golden, with regard to Plaintiff's B1 negotiation strategies. Mr. Golden was one of two people recently hired by Bloomberg to work in the Pricing Group within Data Acquisitions, and the training directive struck Plaintiff as odd, as the Plaintiff had been the only person entrusted to engage in such negotiations in the United States.   Further puzzling was the fact that Defendants' employee, Vlad Golden, had no relevant experience in the sort of contract negotiations in which Plaintiff was engaged in.

52. Soon thereafter, Plaintiff learned that Mr. Golden is Russian and was recommended for the position by Defendant, GARY KOTOVETS, Global Head of Data Acquisitions for Defendant BLOOMBERG, who is also Russian.

53. Plaintiff is American.

54. Plaintiff was substantially more qualified for the contract negotiation position than Defendants' employee, Vlad Golden was, and Vlad Golden was actually substantially unqualified for the position.   In fact, in or about December of 2012, Plaintiff overheard

Defendant MICHAEL MORRIS say on the phone, "I can't believe I have to hire this guy," referring to Mr. Golden.

55. Upon information and belief, at all times relevant herein, Defendants' employee, Vlad Golden, was thirty-six (36) years old.

56. At all times relevant herein, Plaintiff was forty-eight (48) years old.

57. Upon information and belief, Defendants discriminated against Plaintiff based on his national origin, in violation of federal, state and city law.

58. Upon information and belief, Defendants retaliated against Plaintiff and unlawfully terminated Plaintiff because of his national origin, and in direct retaliation for Plaintiff's complaints regarding national origin discrimination.

59. Upon information and belief, Defendants discriminated against Plaintiff based on his age, in violation of federal, state and city law.

60. Upon information and belief, Defendants retaliated against Plaintiff and unlawfully terminated Plaintiff because of his age, and in direct retaliation for Plaintiff's complaints regarding age discrimination.

61. Shortly after Plaintiff WOOLF informed Defendant about his medical condition and asked for reasonable accommodations, he received negative performance evaluations, whereas his prior performance evaluations had been good.    Plaintiff WOOLF received a "verbal warning" in March of 2013, a negative interim performance evaluation in June of 2013 and a disciplinary warning in September of 2013.

62. Upon information and belief, Plaintiff received these negative performance evaluations in direct retaliation for his request for a reasonable accommodation under the ADA and for

cooperating with an ongoing EEOC investigation, a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

63. On January 10, 2014, Defendants wrongfully and unlawfully terminated Plaintiff on the basis of his disability, age and national origin, and retaliated against Plaintiff on the basis of his disability, age and national origin, and for having filed a complaint with the EEOC. Furthermore, Defendants interfered with and retaliated against Plaintiff for attempting to exercise his protected right to medical leave.

64. On March 30, 2016, the Equal Employment Opportunity Commission issued a determination on the merits of Plaintiff's claims.

65. The EEOC investigation revealed that Defendant did not engage in good faith communication with Plaintiff concerning his request for a transfer as a reasonable accommodation.

66. The EEOC found that Defendant "made no attempt to understand or discuss the recommendations of Plaintiff WOOLF's doctor and unilaterally determined that changing positions would not help manage [Plaintiff's] stress and/or migraines."  Rather, Defendant "determined that leave was a reasonable accommodation instead, despite [Plaintiff's] doctor stating that 'a medical leave of absence, or intermittent medical leaves of absence, alone will not significantly mitigate this stress' and 'it is critical to control his headaches, and the only way I can see of doing this at this time is to reduce his stress levels.'"

67. The EEOC focused on the fact that Plaintiff WOOLF identified specific jobs he could transfer to, but Defendant "stymied the process and unilaterally terminated [Plaintiff's] employment moments after he was approved for another FMLA leave in January 2014."

Therefore, the EEOC determined that there is reasonable cause to believe that Defendant discriminated against the Plaintiff on account of his disability, by not engaging in an interactive process in good faith to determine if he could be moved to another position, and then retaliating against him in issuing negative performance evaluations and a disciplinary warning and terminating his employment, all of which is in violation of the American with Disabilities Act as amended.

68. As has been demonstrated, Defendants discriminated against Plaintiff on the basis of his disability by failing to accommodate Plaintiff's request for a reasonable accommodation.

69. Immediately thereafter, on or about January 10, 2014, Defendants wrongfully and unlawfully terminated Plaintiff on the basis of his age, national origin and disability and retaliated against Plaintiff on the basis of his disability and for having filed a complaint with the EEOC.

70. As a result of Defendants' actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

71. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

72. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails.   Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

73. As Defendants' conduct has been calculated, malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all

Defendants jointly and severally.

74. The above are just some of the examples of unlawful and discriminatory conduct to which Defendants subjected Plaintiff.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE AMERICANS WITH DISABILITIES ACT
## (NOT AGAINST ANY INDIVIDUAL DEFENDANTS)

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

76. Plaintiff claims Defendant BLOOMBERG violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

77. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

78. Defendant BLOOMBERG violated the section cited herein by failing to consider Plaintiff's requests for a reasonable accommodation, as well as discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of his disability and for having filed a complaint with the EEOC.

79. DEFENDANT BLOOMBERG violated the above and Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER
## THE AMERICANS WITH DISABILITIES ACT
## (NOT AGAINST ANY INDIVIDUAL DEFENDANTS)

80. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

81. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

82. DEFENDANT BLOOMBERG violated the above and Plaintiff suffered numerous damages as a result.

## AS A THIRD CAUSE OF ACTION
## THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967
## (NOT AGAINST ANY INDIVIDUAL DEFENDANTS)

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84. The ADEA (29 U.S.C. 626) provides that it shall be unlawful for an employer-

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify their employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this chapter.

(b) It shall be unlawful for an employment agency to fail or refuse to refer for employment, or other-wise to discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age.

85. DEFENDANT BLOOMBERG engaged in unlawful employment practices prohibited by ADEA (29 U.S.C. 626), by allowing age discrimination and causing a hostile work environment.

## AS A FOURTH CAUSE OF ACTION
## RETALIATION UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967
## (NOT AGAINST ANY INDIVIDUAL DEFENDANTS)

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87. SEC. 623 (d) states: It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

88. DEFENDANT BLOOMBERG violated this section by retaliating against Plaintiff after he made several complaints of discrimination.

## AS A FIFTH CAUSE OF ACTION
## FOR VIOLATIONS OF THE

## FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 ET SEQ.
## (NOT AGAINST ANY INDIVIDUAL DEFENDANTS)

89. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

90. §2612 of the Family Medical Leave Act states in pertinent part:

(a) In general
(1) Entitlement to leave
Subject to section 2613 of this title, an eligible employee shall be entitled to a total of
12 workweeks of leave during any 12-month period for one or more of the following:

(A) Because of the birth of a son or daughter of the employee and in order to care for
such son or daughter.

(B) Because of the placement of a son or daughter with the employee for adoption or
foster care.

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if
such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform
the functions of the position of such employee.

(E) Because of any qualifying exigency (as the Secretary shall, by regulation,
determine) arising out of the fact that the spouse, or a son, daughter, or parent of the
employee is on covered active duty (or has been notified of an impending call or
order to covered active duty) in the Armed Forces.

91. DEFENDANT BLOOMBERG violated Plaintiff's FMLA rights by failing to provide him

with appropriate leave thereunder.

## AS A SIXTH CAUSE OF ACTION
## FOR RETALIATION AND INTERFERENCE UNDER THE
## FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 ET SEQ.
## (NOT AGAINST ANY INDIVIDUAL DEFENDANTS)

92. Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint, as if the same were set forth herein fully at length.

93. §2615 of the FMLA states as follows:

> Prohibited acts
> (a) Interference with rights
> (1) Exercise of rights
>
> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
>
> (2) Discrimination
>
> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

94. DEFENDANT BLOOMBERG unlawfully interfered, restrained, and denied Plaintiff's right to exercise and attempt to exercise his rights under the above section and discriminated and retaliated against Plaintiff by terminating Plaintiff from his employment for opposing Defendant's unlawful employment practices and attempting to exercise his rights.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (NOT AGAINST ANY INDIVIDUAL DEFENDANTS)

95. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

96. Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer practices: It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . .

97. DEFENDANTS engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by allowing age discrimination, national origin discrimination, disability discrimination, and causing a hostile work environment.

**AS AN EIGHTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**(NOT AGAINST ANY INDIVIDUAL DEFENDANTS)**

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

99. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

100. DEFENDANTS engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of DEFENDANT.

**AS A NINTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**NEW YORK STATE LAW**
**(AGAINST ALL DEFENDANTS)**

101. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

102. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color,

national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

103. DEFENDANT engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his age, national origin, disability, and causing a hostile work environment.

104. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## AS A TENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW
## (AGAINST ALL DEFENDANTS)

105. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

106. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

107. DEFENDANTS engaged in an unlawful discriminatory practice by wrongfully retaliating against Plaintiff.

## AS AN ELEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW
## (AGAINST ALL DEFENDANTS)

108. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of the complaint.

109. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

110. DEFENDANTS engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

## AS A TWELFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

111. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

112. The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

113. DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against the Plaintiff because of Plaintiff's age, national origin and disability.

114. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs

of New York City Administrative Code Title 8.

**AS A THIRTEENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

115. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

116. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

117. DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

**AS A FOURTEENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

118. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

119. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

120. DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and

coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A FIFTEENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

121. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

122. Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

123. DEFENDANTS violated the above section as set forth herein.

## AS A SIXTEENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

124. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

125. Section 8-107(13) entitled Employer Liability For Discriminatory Conduct By Employee, Agent or Independent Contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two

of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

126. DEFENDANTS violated the above section as set forth herein.


**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.


Dated:   New York, New York
         September 2, 2016

                              DEREK SMITH LAW GROUP, PLLC
                              Attorneys for Plaintiff

By:

                              Abraham Z. Melamed, Esq.
                              30 Broad Street, 35th Floor
                              New York, New York 10004
                              (212) 587-0760